Michael D. Hynes, Esq.
Lane E. McKee, Esq.
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

and

Michael W.O. Holihan, Esq. (*pro hac* admission)
Kimberly A. Harchuck, Esq. (*pro hac* admission)
**Holihan Law**
1101 North Lake Destiny Road, Suite 275
Maitland, FL 32751
(407) 660-8575
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> -against- <br><br> B&H CUSTOMS SERVICES, INC., HANA FREIGHT LLC D/B/A HANA INTERNATIONAL LOGISTICS, SHINE SHIPPING LTD, SHINE INTERNATIONAL TRANSPORTATION (SHENZHEN) LIMITED, and VARIOUS JOHN DOES, JANE DOES, and XYZ COMPANIES, <br><br> Defendants. | Civil Action No.: 1:20-cv-01214-JMF |

STIPULATED PERMANENT INJUNCTION AND FINAL ORDER AGAINST
SHINE SHIPPING LTD AND SHINE INTERNATIONAL TRANSPORTATION (SHENZHEN) LIMITED

Upon consideration of the Stipulated Permanent Injunction and Final Order, and this Court being fully aware of the premises, the Court makes the following findings of fact and conclusions of law:

1. Defendants, Shine Shipping Ltd. and Shine International Transportation (Shenzhen) Limited (collectively, "Shine") stipulate that this Court has jurisdiction over the Plaintiff and the Defendants and the subject matter of this action.

2. Shine stipulates that NIKE, Inc. ("NIKE") is the owner of the distinctive trademarks identified by the index of registrations below, which trademarks are incorporated herein and will collectively be referred to as the "NIKE Trademarks." The registrations are valid and subsisting, and conclusive proof of NIKE's rights to the NIKE Trademarks and properties noted:

| Mark | Design | Registration No. | Date of Issuance | Class |
|---|---|---|---|---|
| Swoosh Air Design | | 2,068,075 | 06/03/1997 | 25 |
| Swoosh Design | | 1,284,385 | 07/03/1984 | 25 |
| Swoosh Design | | 977,190 | 01/22/1974 | 25 |
| Swoosh Design | | 1,323,342 | 03/05/1985 | 25 |
| Swoosh Design | | 1,323,343 | 03/05/1985 | 25 |
| Air Max Word Mark | | 1,508,348 | 10/11/1988 | 25 |

| Mark | Design | Registration No. | Date of Issuance | Class |
|---|---|---|---|---|
| NIKE Swoosh Design | NIKE | 1,325,938 | 03/19/1985 | 25 |
| Basketball Player Silhouette | (Jumpman) | 1,742,019 | 12/22/1992 | 18, 25 |
| NIKE Word Mark | | 978,952 | 02/19/1974 | 25 |
| Swoosh Word Mark | | 1,200,529 | 07/02/1982 | 25 |
| Just Do It Word Mark | | 1,875,307 | 01/24/1995 | 25 |
| NIKE Swoosh Air Design | NIKE AIR | 1,284,386 | 07/03/1984 | 25 |
| NIKE Air Word Mark | | 1,307,123 | 11/27/1984 | 25 |
| Air-Sole Word Mark | | 1,145,812 | 01/13/1981 | 25 |
| Vapormax Word Mark | | 5,503,242 | 06/26/2018 | 25 |
| NIKE Air Vapormax Word Mark | | 5,286,596 | 09/12/2017 | 25 |
| Flyknit Word Mark | | 4,393,310 | 08/27/2012 | 25 |
| NIKE Word Mark | | 1,214,930 | 11/02/1982 | 25 |

3. NIKE brought this action (the "Litigation") against Shine, alleging claims of direct and contributory trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, violation of the Tariff Act, and unlawful importation of goods bearing infringing/counterfeit marks in violation of the laws of the United States. Shine has denied liability for the claims asserted by NIKE in the Litigation.

4. Notwithstanding Shine's foregoing denial of liability, Shine has never been authorized by NIKE to import, manufacture, transport, sell, offer for sale, advertise, promote, market, display, or distribute merchandise bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the NIKE Trademarks, or any trademarks that Nike owns and has registered with the United States Patent and Trademark Office, or bearing any design or image that is of a substantially similar appearance to the NIKE Trademarks.

5. Without admission of liability of any kind as to the allegations brought by NIKE in the Litigation, Shine, its officers, directors, agents, employees, affiliates, divisions, and subsidiaries agree that in the future, while acting on or behalf of Shine, shall not willfully and/or knowingly import, transport, manufacture, export, distribute, offer for sale, sell, traffic, or assist in the importation, transportation, manufacture, exportation, distribution, offering for sale, selling, or trafficking, in any goods bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the NIKE Trademarks, or any bearing a design or image that is likely to cause confusion with any of the NIKE Trademarks.

6. Shine agrees and stipulates that it acts as a United States Federal Maritime Commission ("FMC") registered, foreign domiciled, non-vessel operating common carrier ("NVOCC") pursuant to 46 CFR § 515.19, and in this capacity, provides transportation services for third parties transporting goods from foreign countries to the United States for purposes of the

importation of such goods into the United States (collectively, "Cargo Transportation Services"). Shine further agrees and stipulates that such Cargo Transportation Services are regulated in part by the FMC, as well as United States Customs and Border Protection ("CBP"). Additionally, Shine agrees and stipulates that FMC and CBP regulations prohibit it from knowingly passing on false or misleading information related to the transportation and importation of goods into the United States, and such regulations further require Shine to maintain copies of relevant documents, including electronic documents, which relate to Shine's provision of Cargo Transportation Services, importation or the assistance of importation of cargo into the United States, or exportation or the assistance of exportation of cargo out of the United States, for a period of five (5) years from the date of transportation or customs entry of any cargo imported in or exported out of the United States. Shine further agrees and stipulates that it has a duty of due diligence and reasonable care not to transport, import, or assist in the transportation or importation, of any goods that are in violation of United States law.

7.      Shine stipulates and agrees to entry of the Permanent Injunction and Final Order against it in the form below.

In view of the foregoing:

IT IS ORDERED AND ADJUDGED that a Permanent Injunction is entered as to Shine, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Shine, along with their agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, from the following:

A.      Willfully importing, exporting, assisting in the importation or exportation, transporting, assisting in the transportation, manufacturing, procuring, distributing, shipping, retailing,

selling, offering for sale, marketing, advertising, or trafficking in any merchandise not authorized by NIKE bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the NIKE Trademarks, or any trademarks that Nike owns and has registered with the United States Patent and Trademark Office, or bearing a design that is likely to cause confusion with the NIKE Trademarks, including but not limited to the NIKE Trademarks listed herein;

B. Willfully passing off, inducing, or enabling others to sell or pass off as authentic products produced by NIKE or otherwise authorized by NIKE, any product not manufactured by NIKE or produced under the control or supervision of NIKE and approved by NIKE, which uses any of the NIKE Trademarks listed herein or any trademarks that Nike owns and has registered with the United States Patent and Trademark Office,;

C. Willfully committing any act calculated to cause purchasers to believe that products subject to Shine's Cargo Transportation Services are those under the control and supervision of NIKE, sponsored, approved, or guaranteed by NIKE, or connected with and produced under the control or supervision of NIKE; and

D. Providing Cargo Transportation Services for counterfeit or infringing goods, which goods violate any United States registered trademark ("Unauthorized Goods"), to and/or from any United States or foreign port, or filing or causing to be filed false information, including manifest information with CBP's Automated Commercial Environment ("ACE"), concerning such Unauthorized Goods, without first conducting a due diligence investigation into the authenticity and source of the transportation documentation upon which it relied to provide Cargo Transportation Services or make any ACE filing concerning the Unauthorized Goods. The Parties stipulate and agree that the following

procedures, if fully and materially complied with by Shine, shall meet the due diligence investigation requirement required by Section D of this Permanent Injunction:

i. Shine shall not provide transportation services for or with any transportation, logistics, or shipping companies not located in the United States ("Foreign Freight Forwarders") which Foreign Freight Forwarders Shine knows to be providing NVOCC services, as that term is defined by 46 CFR § 515.2(k), and which Foreign Freight Forwarders are not registered and bonded through the FMC as a foreign NVOCC;

ii. Shine shall verify the authenticity and source of any documentation, including shipping instructions, for any cargo which it provides Cargo Transportation Services to the United States, prior to providing such services by one of the three procedures identified in subsections (a) through (c) below:

    a. Shine shall communicate directly with the identified shipper of the goods as that shipper is identified on the shipping documentation or shipping instructions (the "Shipper"), by telephone, facsimile, or email. Shine shall communicate with the Shipper via a reliable telephone number, facsimile number, or email address publicly associated with the Shipper as found via: 1) government database or publication; 2) a website where the second level domain of the website domain name incorporates the Shipper's corporate name and the website is, on its face, operated by the Shipper; or 3) any publicly listed and generally recognized as reliable Internet database (the "Reliable Contact Point"). Shine shall, when communicating with the Shipper through the Reliable Contact Point, contact the identified shipper

        and obtain a representation that the information contained in the shipping instructions or shipping documentation is accurate and truthful before providing Cargo Transportation Services. As a material part of this confirmation process, Shine shall generate a written record of the communication(s). If made by telephone, Shine shall note the: 1) date; 2) telephone number utilized; 3) identity of the person(s) contacted; and 4) provide the substance of such communications. If the direct communication occurs via email or facsimile, Shine will ensure that a written record is made of the confirmation containing the same material information as if the confirmation was made via telephone. Additionally, Shine shall maintain a record of the source of the Reliable Contact Point; or

b.    Shine shall communicate directly with the identified Importer of Record if known, and if not known, the Ultimate Consignee of the goods (collectively, the "Importer"), as the Importer is identified on the shipping documentation or shipping instructions, so long as the identified Importer does not appear on the face of the shipping instructions or shipping documents to be a: 1) freight forwarder; 2) logistics entity; 3) receiving agent; or 4) other third party not intended to be the ultimate recipient of the subject goods. Such communication shall occur by telephone, facsimile, or email, and must be made with the Importer via a Reliable Contact Point. Shine shall, when communicating with the Importer through the Reliable Contact Point, obtain a representation that the information contained in the shipping instructions or shipping documentation is accurate and truthful before

providing transportation or importation services. As a material part of this confirmation process, Shine shall make a written record of the communication. If made by telephone, Shine shall note the: 1) date; 2) telephone number utilized; 3) identity of the person(s) contacted; and 4) provide the substance of such communications. If the direct communication occurs via email or facsimile, Shine shall ensure that a written record is made of the communication containing the same material information as if the communication was made via telephone. Additionally, Shine shall maintain a record of the source of the Reliable Contact Point; or

c.  Shine shall receive written verification from any Foreign Freight Forwarder, or any other transportation, logistics, or shipping company based in the United States, which refers to Shine any shipment for transportation or passes on such a shipment to Shine as a co-loaded shipment (collectively, the "Referring Party"), confirming or attesting to the following information:

   (1)  Referring Party represents that it has had direct contact with the Shipper or Importer, and has verified the source and authenticity of the shipping instructions and/or shipping documentation through the requirements of Subsections (D)(ii)(a) and (D)(ii)(b) of this Permanent Injunction; and

   (2)  Referring Party has verified that any cargo container identified on any shipping instructions and/or shipping documents related to the transportation of the cargo, was in fact delivered and acquired from

        the location associated with the Shipper in such shipping instructions and/or shipping documents; and

(3)   Referring Party either: 1) provides Shine with its full address, telephone number, facsimile number, email address, and if applicable, the Referring Party's FMC, Chinese FMC, or comparable Chinese or other foreign transportation license or registration number (which license or registration information Shine independently verifies through the applicable government database), or 2) if the Referring Party is not licensed or registered by the FMC or Chinese FMC, or licensed or registered with a comparable Chinese or other foreign transportation regulatory agency, Shine will conduct a credit check of the Referring Party with the National Enterprise Credit Information Publicity System (NECIPS), CreditChina website, or comparable Chinese or other applicable foreign national credit database, to confirm the validity of Referring Party's legal existence and contact information (hereinafter the "Identity Confirmation"). If the Identity Confirmation shows no record of the existence of the Referring Party, Shine shall not provide Cargo Transportation Services to the Referring Party without first verifying the shipment via the provisions of D.ii.(a) or (b) above.

iii.   Shine shall maintain for a period of five (5) years from the date of providing transportation services, all records related to its transportation and/or importation,

10

    or the assisting in the transportation or importation, of goods to or from the United States via ocean carrier, including, but not limited to the following data which shall collectively be referred to as a Shipping File: 1) shipping instructions; 2) bills of lading; 3) arrival notices; 4) packing lists; 5) commercial invoices; 6) invoices, or bills for transportation or importation services, rendered to or from Shine; 7) entry documents; 8) export documents; 9) ACE filings; 10) Import Security Filing information; 11) CBP or FMC inquiries; 12) customer identity verification information; 13) customer banking information used for any payment; 14) copies of any government identifications reviewed or relied upon; 15) Powers of Attorney; 16) credit checks utilized to conducted the Identity Confirmation under section D.ii.c.(3) above; and 17) relevant communications with any applicable shipper, consignee, vessel operating common carrier, NVOCC, freight forwarder, or other interested party.

iv. If Shine is put on written notice by NIKE, or any United States, Chinese or other foreign government agency, that a Referring Party has previously, willfully or with reckless disregard, transmitted false or misleading transportation documentation involving the transportation or importation of Unauthorized Goods into the United States or into any foreign country (the "Identified Referring Party"), Shine shall cease accepting any further cargo referrals or co-loading with said Identified Referring Party within twenty (20) days of receiving such notice.

It is further ORDERED AND ADJUDGED,

That this Court shall retain jurisdiction of this action for purposes of enforcing the provisions of this Permanent Injunction and Final Order by way of contempt or otherwise. Shine agrees not to contest the validity of the NIKE Trademarks in any such proceedings.

It is further ORDERED AND ADJUDGED,

That the Parties waive appeal of this Permanent Injunction and Final Order.

It is further ORDERED AND ADJUDGED,

That each party to this Permanent Injunction and Final Order shall bear its own attorneys' fees and costs of this action.   SO ORDERED.

Dated this __14th__ day of __April__, 2022.

The Clerk of Court is directed to terminate ECF No. 92.

Honorable Jesse M. Furman
United States District Court Judge

The foregoing has been stipulated by the following:

Date: April 11, 2022

Michael W.O. Holihan, Esq. (*pro hac admission*)
Kimberly A. Harchuck, Esq. (*pro hac admission*)
**Holihan Law**
1101 North Lake Destiny Rd.
Suite 275
Maitland, FL 32751
(407) 660-8575
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Attorneys for NIKE, Inc.

Date: April 11, 2022

Brendan Collins, Esq.
GKG Law, P.C.
1055 Thomas Jefferson Street, NW
Suite 500
Washington DC 20007
(202) 342-6793
bcollins@gkglaw.com
Counsel for Shine Shipping Ltd. and Shine International Transportation (Shenzhen) Limited

Date: 8 April 2022

CHIM KWOK CHING
Shine Shipping Ltd. and Shine International
Transportation (Shenzhen) Limited

GENERAL MANAGER
Title